ROBERT BURNS, Ex'r of the Estate of Emgard Burns, Deceased, Plaintiff-Appellant, v. JOSEPH MICHELOTTI et al., Defendants-Appellees.

Second District   No 2—92—0118

Opinion filed December 8, 1992.

924

Robert A. Clifford and Keith A. Hebeisen, both of Robert A. Clifford & Associates, of Chicago (Robert P. Sheridan, of counsel), for appellant.

Kevin J. Vedrine, of O'Reilly, Cunningham, Norton & Mancini, of Wheaton (William F. Cunningham, of counsel), and Robert S. Kramer, of Robert S. Kramer, P.C., of Elgin, for appellee R.P. Garla.

Therese S. Seeley, of Connelly, Mustes & Schroeder, of Geneva (John L. Schroeder, of counsel), for appellee Joseph Michelotti.

JUSTICE McLAREN delivered the opinion of the court:

This medical malpractice action was brought by Robert Burns, individually and as executor of the estate of Emgard A. Burns, deceased, against Joseph Michelotti, M.D., and Renuka Garla, M.D. Plaintiff sought damages for the pain and suffering and wrongful death of decedent allegedly resulting from negligent care in the context of surgical treatment for a gallbladder condition. A jury verdict was returned in favor of both defendants.

On appeal, plaintiff asserts the following reasons for retrial: (1) counsel for defendant Garla engaged in improper *ex parte* communication with treating physicians; (2) defendant Dr. Garla made a statement in her deposition which amounted to a judicial admission which should have resulted in a granting of plaintiff's motion to direct a finding as to causation; (3) the expert testifying on Dr. Garla's behalf expressed opinions at trial which differed from those he expressed in his discovery deposition; (4) the trial court refused to apply Rule 220 standards to Dr. Michelotti to the extent that he testified as an expert for Dr. Garla; (5) several erroneous evidentiary rulings were made during trial; (6) defense counsel made improper statements during closing argument; and (7) the totality of the issues presented above amounted to cumulative error. We affirm.

Responding to complaints of epigastric pain, Dr. Koo referred his patient, Emgard Burns (Mrs. Burns), to Dr. Michelotti for surgical treatment of a suspected gallbladder problem. Dr. Koo belonged to a group of doctors who shared Mrs. Burns as a patient. This group included Doctors Fiedler, Flynn, and Kosinski. Dr. Koo specialized in internal medicine with a subspecialty in pulmonary disease.

After performing a medical examination of Mrs. Burns, Dr. Michelotti confirmed the existence of a gallbladder problem and scheduled Mrs. Burns for elective surgery. On December 1, 1986, Dr. Garla, the anesthesiologist for the surgical procedure, performed a preoperative evaluation and determined that Mrs. Burns had a hypoplastic mandible (a small chin) and an anterior larynx. These preoperative findings indicated the possibility of difficulties in the administration of anesthesia.

Anesthesia is accomplished through a procedure called intubation. This process involves, among other things, the use of two separate tubes. One tube, an endotracheal tube, is inserted through the patient's mouth and into the trachea. Oxygen and anesthetic gases then pass into the lungs from the tube. Another tube, a nasogastric tube, is passed through the patient's nose and esophagus and into the patient's stomach. This tube decompresses and empties the contents of the patient's stomach so that there will not be any regurgitation or vomiting while the patient is under anesthesia. In general, intubation cannot be performed while the patient is conscious. Therefore, succinylcholine is used to completely sedate the patient prior to intubation in order to facilitate the procedure. Breathing is aided during the procedure by forcing air into the patient's lungs through the manual compression of an air bag connected to a mask which fits over the patient's face.

Prior to surgery, Dr. Garla unsuccessfully attempted to intubate Mrs. Burns two times before properly positioning the endotracheal tube into the trachea. Dr. Garla abandoned her first attempt because of difficulties she had visualizing the area as a result of Mrs. Burns' anterior larynx. On the second attempt, Dr. Garla incorrectly placed the endotracheal tube into Mrs. Burns' esophagus. On the third attempt, Dr. Garla repositioned Mrs. Burns' head and successfully placed the endotracheal tube into her trachea. After each unsuccessful intubation, Mrs. Burns received oxygen from the manually compressed air bag.

Dr. Michelotti subsequently performed the gallbladder surgery without incident. He admits awareness of the fact that it took more than one attempt to complete a successful intubation.

Over the course of several days, Mrs. Burns' health began to decline. She developed an elevated temperature and an increased heart rate on the evening following the surgery. On December 2, the following morning, she developed a sore throat, experienced chest pains, and began to wheeze. At trial, the parties disputed the significance of these symptoms.

On December 3, 1986, in response to Mrs. Burns' worsening condition, Dr. Michelotti consulted with Dr. Flynn, a doctor of internal medicine with a subspeciality in infectious diseases. Dr. Flynn suspected that the problem related to a blood clot in Mrs. Burns' lung. Later that day, as Mrs. Burns' blood pressure began to drop, Dr. Michelotti consulted with Dr. Koo. The three doctors eventually ruled out pulmonary embolism as the cause of Mrs. Burns' problems. Throughout the day, Mrs. Burns' condition continued to worsen. Nearing respiratory failure, the physicians placed her on a ventilator for oxygen. This subsequent ventilation also required intubation which was accomplished without incident.

On December 9, 1986, Dr. Koo mentioned mediastinitis as a possible cause of Mrs. Burns' suffering. Mediastinitis is an infection of the mediastin, the area of the chest bordered by the neck, the diaphragm, and the lungs on either side. Dr. Koo suspected that Mrs. Burns' mediastin became infected because of a perforation in her esophagus which allowed saliva and other materials and bacterial matter to pass into areas of her chest, heart, and lungs. This diagnosis was confirmed through a visual scoping of the esophagus, which indicated that the perforation was located at a point where the trachea and the esophagus separate from each other.

Dr. Michelotti closed the perforation and placed drains in Mrs. Burns' neck in an effort to drain the infection. Another operation was

performed on December 14, 1986, in an effort to drain the infection. Mrs. Burns remained in intensive care until February 11, 1987, at which time she died during an emergency surgery.

Plaintiff's complaint cited Dr. Garla's negligence in performing the intubation as the cause of the esophageal perforation. The complaint also accused Dr. Garla and Dr. Michelotti of failing to timely diagnose and treat decedent's condition.

Plaintiff first demands a retrial because of *ex parte* communications which took place between the attorneys for Dr. Garla and several treating physicians in violation of *Petrillo v. Syntex Laboratories, Inc.* (1986), 148 Ill. App. 3d 581. Specifically, Dr. Garla's attorneys secured, through the mail, affidavits from these witnesses in order to support a motion to transfer venue from Cook County to Kane County. In support of this motion, Dr. Garla presented many facts relating to the location of witnesses and evidence, as well as arguments relating to fairness and judicial efficiency.

The motion indicates that six of the treating physicians maintain offices in Kane County and five of the six reside in Kane County. The letter requesting the treating physicians' signatures on the affidavits is not in the record. However, counsel for plaintiff provided the following description of the letter in the record:

"[I]t looks like a form letter that's sent to each of the doctors that says in the letter, please be advised we represent R. P. Garla, Defendant, in the above captioned medical malpractice lawsuit currently pending in this Circuit Court of Cook County. We have filed a motion to transfer this case to the Circuit Court of Kane County on the basis that all of the treatment rendered this patient occurred at Sherman Hospital during a hospitalization of December 1, 1986; and, therefore, Kane County is the proper venue.

*** [W]e are asking your help and have enclosed an affidavit for your review, which we would like to use in support of this motion. If the affidavit meets with your approval, we ask that you sign where indicated and have your signature notarized. We ask that you then return the affidavit to us at your earliest convenience so we can present it to the Court when the motion is heard. We look forward to your response and thank you for your anticipated cooperation."

The affidavits themselves state that the affiant's medical practice and residence are located in Kane County and that all treatment rendered by affiant to plaintiff's decedent likewise occurred in Kane County.

The treating physicians presumably returned the signed affidavits to Dr. Garla's attorney through the mail.

Plaintiff seeks a new trial in which defendants would be barred from calling as witnesses any treating physicians with whom defendants had *ex parte* contact. In support of this position, plaintiff argues that *all ex parte* communications between defense counsel and a plaintiff's treating physician are prohibited as violative of public policy because they jeopardize the sanctity of the confidential and fiduciary relationship between a physician and his patient. According to plaintiff, the extent of the contact, the harm produced by the contact, and questions of good faith are irrelevant to the analysis.

Dr. Garla argues that plaintiff failed to properly present the issue for review and, in the alternative, that reversal cannot be granted where the *ex parte* communication complained of amounted to *de minimis* contact. Dr. Michelotti argues he is beyond reproach because his attorneys were not involved in the communications in question.

■ We cannot accept Dr. Garla's initial argument that the issue is not properly presented for review. Dr. Garla correctly asserts that excerpts from discovery depositions are not included in the record for purposes of substantiating the alleged *Petrillo* violation. However, defense counsel for both defendants failed to object when counsel for plaintiff read the allegedly violative letter into the record. Therefore, the excerpts became incorporated as evidence into the report of proceedings pursuant to Rule 323 (134 Ill. 2d R. 323) and, therefore, a part of the record on appeal pursuant to Rule 321 (134 Ill. 2d R. 321). In addition, the attorneys for both defendants subsequently presented arguments about the minimal nature of the contact and its lack of resulting harm to plaintiff's case. In our view, these actions amount to a tacit admission regarding the existence and content of the letters sent to the treating physicians.

■ We next address defendant's argument that a reversal cannot be granted where the *ex parte* communication was of a *de minimis* nature. We do not agree. In our view, all *ex parte* communication between defense counsel and a treating physician amounts to a violation of public policy and should be sanctioned in the discretion of the trial court.

The leading case in this area, *Petrillo v. Syntex Laboratories, Inc.*, determined that *ex parte* conferences between defense counsel and a plaintiff's treating physician jeopardize the sanctity of the physician/patient relationship and, therefore, are prohibited as against public policy. (*Petrillo*, 148 Ill. App. 3d at 588.) In a footnote, *Petrillo* defines *ex parte* contacts as including "any discussion that defense

counsel has with a plaintiff's treating physician which is not pursuant to the authorized methods of discovery." (148 Ill. App. 3d at 584 n.1.) The *Petrillo* court held that strong public policy concerns about the ethical and fiduciary relationship between a patient and physician underlie the prohibition of *ex parte* conferences, particularly where such information is readily obtainable through the regular methods of discovery. (*Petrillo*, 148 Ill. App. 3d at 596.) In light of this position, the *Petrillo* court affirmed the trial court's order finding an attorney in contempt of court as a result of his failure to comply with the court order barring him from engaging in *ex parte* conferences with the plaintiff's treating physicians. Thus, in general, a violation of the physician-patient privilege is said to occur at the time an *ex parte* conference takes place between the plaintiff's treating physician and the counsel for defense. This violation occurs regardless of what information is actually revealed during that conference. *Mondelli v. Checker Taxi Co.* (1990), 197 Ill. App. 3d 258, 265.

*Mahan v. Louisville & Nashville R.R. Co.* (1990), 203 Ill. App. 3d 748, *appeal denied* (1990), 135 Ill. 2d 557, strays from the general trend which finds a *Petrillo* violation regardless of the nature of the contact between defense counsel and the treating physician. In *Mahan*, the court held that a *Petrillo* violation does not occur where the *ex parte* communication is of a *de minimis* nature and does not result in the disclosure of any private or confidential information regarding the patient. (*Mahan*, 203 Ill. App. 3d at 754.) We disagree with *Mahan* and determine that the policies enunciated by *Petrillo* are better served by finding that improper *ex parte* communication has occurred any time defense counsel has *ex parte* contact with a treating physician. Therefore, in the present case, we hold that the contact occurring through the affidavit requests and exchanges amounted to a *Petrillo* violation. We must now determine whether that violation requires a sanction.

■■ The determination of an appropriate sanction for a *Petrillo* violation lies within the sound discretion of the trial court. (*Pourchot v. Commonwealth Edison Co.* (1992), 224 Ill. App. 3d 634, 637.) Many courts have sanctioned *Petrillo* violations by barring the testimony of treating physicians involved in *ex parte* communications with defense counsel. For example, in *Karsten v. McCray* (1987), 157 Ill. App. 3d 1, 14, the court adopted the reasoning in *Petrillo* and held that "barring the testimony of a plaintiff's treating physician is an appropriate sanction to protect the physician-patient privilege from defense interviews outside formal discovery." The court explained that while an order barring the testimony or evidence resulting from unauthorized

conferences would not remedy the breach of trust addressed by *Petrillo*, the sanction is appropriate in order to protect the patient's confidences and precludes such conferences from taking place in the future. (*Karsten*, 157 Ill. App. 3d at 14.) The court noted that discussion of a patient's confidences is potentially harmful when it is not conducted through formal discovery procedures and that the patient should be allowed to protect his physician-patient privilege, by appropriate objection, before it is compromised. *Karsten*, 157 Ill. App. 3d at 14.

In our view, barring an expert's testimony will not always be the proper sanction for a *Petrillo* violation. In *Pourchot*, the court determined that a *Petrillo* violation required a reversal of the trial court's order denying plaintiff's motion for sanctions on the matter. The court explained that, if the trial court believes the plaintiff's treating physician's testimony has been tainted by virtue of the improper *ex parte* communication, then the appropriate sanction is to bar the testimony. (*Pourchot*, 224 Ill. App. 3d at 637.) Following this reasoning, it is entirely possible for a trial court to determine that a physician's testimony had *not* been tainted by virtue of an improper *ex parte* communication. For example, under such circumstances where the communication is of a *de minimis* nature, a court may refuse to impose sanctions for a *Petrillo* violation.

Additionally, in *Yates v. El-Deiry* (1987), 160 Ill. App. 3d 198, the court determined that a new trial may be ordered in the face of a *Petrillo* violation where prejudice or improper conduct can be shown. The court further determined that such prejudice and improper conduct can be implied from the mere fact that an *ex parte* communication took place. In our view, it follows that this implication can be rebutted. Thus, if an opponent can show the absence of prejudice or improper conduct, a *Petrillo* violation would not warrant a sanction barring the physician's testimony or a reversal ordering the same on retrial.

■ In the present case, the trial court considered barring the testimony of the treating physicians as a sanction but decided that such a sanction would be inappropriate in light of the minimal nature of the contact. Instead, the trial court allowed plaintiff's counsel to *voir dire* the treating physicians in order to determine if there were any other *Petrillo* violations. The trial court characterized this ruling as a sanction.

We determine that this "sanction" did not amount to an abuse of the trial court's discretion. The minimal nature of the contact in question and its lack of relevance to the substance of the case rendered it

relatively harmless, minimally improper and hardly prejudicial. The contact merely came in the form of a written request for the treating physician's residence and workplace and the location of plaintiff's treatment for purposes of a venue change. The transmission of this information between Dr. Garla's defense attorneys and the treating physicians could not have tainted the physicians' testimony to such an extent as to warrant a retrial. Therefore, the trial court did not abuse its discretion in refusing to bar the testimony of the treating physicians, and we will not order a retrial on this issue.

■ Plaintiff next cites error in the trial court's refusal to hold that statements made by Dr. Garla during her deposition amounted to judicial admissions of liability for the perforation of decedent's esophagus. Plaintiff asserts that reversal of a judgment is required where the trial court refuses to consider the judicial admission as binding. We determine that Dr. Garla's statements did not rise to the level of judicial admissions.

The statements a party makes during a discovery deposition may be treated as an admission. (134 Ill. 2d R. 212(a)(2).) If the admission amounts to a judicial admission, it is binding upon the party, and it may not be controverted. (*Trapkus v. Edstrom's, Inc.* (1986), 140 Ill. App. 3d 720, 722.) A judicial admission is a clear and unequivocal statement which is made without reasonable chance of mistake about a matter within the speaker's personal knowledge. (*Trapkus*, 140 Ill. App. 3d at 723.) A party cannot create a factual dispute by contradicting a previously made judicial admission. (*Hansen v. Ruby Construction Co.* (1987), 155 Ill. App. 3d 475, 480.) We have reviewed the record and, in our view, Dr. Garla's responses are not unequivocal and, therefore, do not amount to judicial admissions. Dr. Garla's statements express a large measure of uncertainty. The fact that she does not discount valid hypotheses posed by plaintiff's counsel is consistent with and reflective of her expressed uncertainty.

A judicial admission is the highest and best type of evidence which dispenses with the need for proof of the facts submitted. (*O'Neill v. Chicago Transit Authority* (1972), 5 Ill. App. 3d 69.) In our view, responses which are equivocal in nature, such as those made by Dr. Garla, do not dispense with the need for proof of the facts submitted. Therefore, plaintiff's request for reversal on these grounds is denied.

■ Plaintiff next argues that a new trial is required because Dr. Garla's expert, Dr. Edward Brunner, was allowed to testify in the manner inconsistent with the opinions he disclosed during discovery in violation of Supreme Court Rule 220. (134 Ill. 2d R. 220(d).) Prior to

the presentation of Dr. Brunner's testimony at trial, counsel for plaintiff made an oral motion to bar the doctor from giving any opinions to the effect that the nasogastric tube, or Salem sump tube, caused the perforation of decedent's trachea. In support of this motion, plaintiff explained that such opinions must be barred because they were not revealed by the doctor during his deposition.

At trial, plaintiff specifically moved to bar any opinion as to how the Salem sump caused the esophageal perforation because the doctor's testimony during his deposition took the form of speculation.

Rule 220(d) provides in part:

> "To the extent that the facts known or opinions held by an expert have been developed in discovery proceedings through interrogatories, depositions or requests to produce, his direct testimony at trial may not be inconsistent with or go beyond the fair scope of the facts known or opinions disclosed in such discovery proceedings. However, he shall not be prevented from testifying as to facts or opinions on matters regarding which inquiry was not made in the discovery proceedings." (134 Ill. 2d R. 220(d).)

The committee comments identify the purpose of the rule as one which seeks to "permit litigants to ascertain and rely upon the opinions of experts retained by their adversaries." (134 Ill. 2d R. 220(d), Committee Comments, at 182.) Thus, opinions expressed by an expert at trial are inadmissible if they are inconsistent with or exceed the scope of opinions that expert expressed during discovery. (*Bart v. Union Oil Co.* (1989), 185 Ill. App. 3d 64.) A decision to allow an expert to testify on matters of opinion lies within the discretion of the trial court. *Ramos v. Pyati* (1989), 179 Ill. App. 3d 214, 229.

In the present case, over plaintiff's objection, the following discourse took place between Dr. Brunner and defense counsel:

> "Q. And do you have an opinion based on a reasonable degree of medical and surgical certainty as to the most likely cause of the perforation as of December 3, 1986?
>
> * * *
>
> THE WITNESS: There are a variety of factors that could explain the perforation. The patient had a nasogastric tube inserted at the time of the surgery. A Salem sump is a rather rigid tube. Passing that with an endotracheal tube present in the trachea, now remember the balloon bulges out, will cause some difficulty in passage.
>
> You—I think that there was testimony by Doctor Garla that she, in fact, had to use her fingers to help guide that tube

down the throat. And the reason is that the tube gets misdirected. Instead of being able to go straight down the esophagus, that balloon pushes against the wall, pushes the Salem sump against the wall. It's possible that there could have been some denudation of the mucosa at that point.

\* \* \*

THE WITNESS: We know that the patient subsequently had thick secretions that she cleared with difficulty. In developing a cough, it's difficult to clear secretions. And if you cough, you raise the pressure within the lungs, you fix the diaphragm, and you frequently purse your lips (demonstrating), and that pushes the pressure down into the esophagus, which we know that increasing the pressure in the esophagus in the presence of an injury can in fact cause a rupture, spontaneous rupture of the esophagus does occur.

It's been described in the surgical literature for years. Over a hundred years. It's called Boerhaave's Syndrome. It's usually associated with retching. But in this circumstance, it's my opinion beyond a—well, with a reasonable degree of certainty, that that's the mechanism which caused the injury to the esophagus."

Plaintiff argues that this opinion at trial was not disclosed as an opinion at the doctor's deposition but, instead, was expressed in the form of speculation. In support of this argument plaintiff cites the following discourse at Dr. Brunner's deposition:

"Q. So when we talk about your opinion that on December 1st there was some erosion or disruption in the esophagus, we're talking about a traumatic erosion, correct?

A. That's a possibility. But if you remember, I said I couldn't define with any degree of medical certainty that that's *when* that occurred. [Emphasis added.] That would be one possibility, that is correct.

\* \* \*

[Q.] How, then, in the exercise of reasonable care and caution could a disruption in the esophagus occur in the area of the cricopharyngeal junction by the insertion of the NG tube?

A. I would think if it was the—not the NG, but the Salem sump. The Salem sump is a reasonably rigid instrument, and may have denuded the mucosa and down into the submucosal muscalaris layers as it was being guided down the esophagus.

Q. And how was it—

A. I'm speculating. I'm speculating."

In the isolated context plaintiff would have us view them, these statements do not seem to express an opinion within a reasonable degree of medical certainty. However, from the context of the full text of the deposition, Dr. Brunner's opinions on the matter are more apparent. For example, Dr. Brunner unambiguously expressed his opinion that "there was not a through and through rupture of the esophagus at the time of intubation [on December 1]." Dr. Brunner agreed with the plaintiff's questioning attorney that the basis of this opinion is the doctor's belief that symptoms of esophageal perforation would have occurred sooner than December 3, had such a perforation occurred on December 1. Dr. Brunner explained:

"A. If the perforation had occurred at that time and was through and through with contamination of the structures of the neck, I would have expected that there would have been an inflammatory process and a body response and a rise in white cell count. And the symptomatic episodes that I described earlier, I would have expected those to occur much earlier if something happened at the time of surgery.

What happened was that there was a weakening, maybe an erosion, by the presence of the nasogastric tube, that's one possibility, which then led to further damage of the esophagus and the through and through perforation at the time the patient became symptomatic or shortly before that.

Do I make myself clear to you now?

Q. Yes."

Dr. Brunner further testified:

"A. Oh, there is no question that the presence of a nasogastric tube could cause such an erosion in the esophagus, and it's possible that the endotracheal tube or a stylet, a sharp stylet protruding from the endotracheal tube, could do so."

Thus, Dr. Brunner opined, both at trial and during discovery, that the nasogastric tube inserted at the time of decedent's surgery may have caused some denudation of the mucosa in decedent's esophagus which became a through-and-through perforation at some later time. Dr. Brunner's testimony is not, as plaintiff characterizes it, that the nasogastric tube caused the actual perforation. Therefore, because Dr. Brunner's trial testimony was consistent with his deposition testimony, and because Dr. Brunner's trial testimony did not go beyond the scope of the facts known or opinions disclosed during discovery proceedings, we deny plaintiff's request for a reversal on this matter. We hold that the trial court did not abuse its discretion in refusing to bar Dr. Brunner's expert testimony.

■ Plaintiff next argues that he was denied a fair trial because the trial court permitted Dr. Michelotti to provide testimony at trial which included an opinion about the cause of decedent's death that he formulated subsequent to his deposition but prior to trial. Plaintiff characterizes Dr. Michelotti as an expert with respect to his opinions regarding the cause of the esophageal perforation. As an expert, plaintiff asserts that Dr. Michelotti's testimony at trial violated Supreme Court Rule 220 due to its inconsistency with his deposition. (134 Ill. 2d R. 220.) Dr. Garla argues that plaintiff has waived this argument because it is raised for the first time on appeal. We agree.

At trial, plaintiff objected to Dr. Michelotti's testimony because it was contrary to an opinion he previously gave under oath and because his newly formulated testimony was based in part upon a review of the literature which plaintiff had not been privy to. Plaintiff specifically stated in arguing this objection that "I am not talking about 220." Moreover, plaintiff's post-trial motion mentioned error in allowing Dr. Michelotti to provide testimony different from his sworn deposition, but the post-trial motion does not alert the trial court that the basis of the objection requires a characterization of Dr. Michelotti as a Rule 220 expert.

The focus of plaintiff's objection at trial was on the surprise inherent in Dr. Michelotti's new testimony and the need to review the world literature upon which Dr. Michelotti apparently relied in order to arrive at his new opinions. In response to Dr. Michelotti's testimony, plaintiff moved for a mistrial, sought to strike the testimony, and requested extra time in order to review the literature upon which Dr. Michelotti relied. In arguing for this requested relief, plaintiff never characterized Dr. Michelotti as a Rule 220 expert.

On several occasions during these discussions, the trial court specifically stated that Dr. Michelotti was not a Rule 220 expert. Plaintiff never argued to the contrary or corrected the trial judge. At one point during the discussions, the trial court specifically expressed its opinion that Rule 220 does not apply. Counsel for plaintiff unambiguously responded, "I agree with that."

A specific objection to evidence, based solely on particular grounds, amounts to a waiver of objections to all grounds not specified or relied upon. (*Barreto v. City of Waukegan* (1985), 133 Ill. App. 3d 119, 130.) Plaintiff's failure to present this characterization of Dr. Michelotti as a Rule 220 expert to the trial court below effectively precluded the trial judge or opposing counsel from responding to the argument. Since plaintiff's grounds for relief were not specified in

this post-trial motion, he may not urge this point as error on appeal. 134 Ill. 2d R. 366(b)(2)(iii).

■ Plaintiff next asserts reversible error where the trial court allowed a nurse to testify about her observations of the amount of force Dr. Garla exerted in performing the intubation. Specifically, plaintiff objected to the following statements made by the nurse: "I don't recall that there was any unusual amount of force." "I did not see any undue force." Plaintiff asserts that, as a layperson, the nurse was not qualified to render the opinions cited above. Citing *People v. Robinson* (1981), 102 Ill. App. 3d 884, 891, plaintiff argues that, while a layperson may express opinions under certain circumstances, a proper foundation must be established which shows the witness to have personal knowledge of the facts that form the basis of that opinion. Plaintiff asserts that no such foundation was laid in the present situation.

According to *Robinson*:

> "A nonexpert, lay witness who has had an opportunity to observe an individual may give his opinion as to the latter's mental condition at that time so long as his testimony contains sufficient facts and circumstances forming the basis for the opinion. [Citations.] The question of whether the witness has related sufficient underlying facts and circumstances to serve as a foundation for such testimony is for the trial court to decide, and that decision will not be altered in the absence of a showing of abuse of discretion." (*Robinson*, 102 Ill. App. 3d at 891.)

The facts in *Robinson* involved an arresting officer's testimony about the defendant's apparent mental status at the time of an arrest. The court determined that the arresting officer's observation of and interaction with other criminals presented the necessary foundation for the officer to form opinions about the defendant's mental state. The *Robinson* court finally stated that "it was for the jury to assign weight to his testimony in light of this foundation and the remaining evidence of record." *Robinson*, 102 Ill. App. 3d at 891-92.

We agree with plaintiff's assertion that the nurse's testimony amounts to an opinion because it is a conclusion about the proper force to be used in performing an intubation and because the conclusion is drawn by a person who is unqualified to perform an intubation. The trial court improperly treated the nurse's statements as a mere observation of Dr. Garla's actions and, thereby, did not correctly respond to plaintiff's objection that a foundation had not been made which would qualify the nurse to make statements about the existence

or the absence of undue force applied by Dr. Garla. Nevertheless, we find that the error was not so prejudicial as to warrant reversal.

We will not grant reversal upon rulings on evidence unless the error was substantially prejudicial and affected the outcome of the trial. (*Jackson v. Pellerano* (1991), 210 Ill. App. 3d 464, 471.) The burden is on the party seeking reversal to establish prejudice. (*Jackson*, 210 Ill. App. 3d at 471.) We determine that plaintiff has not shown sufficient prejudice on this issue to warrant reversal.

First, the nurse testified that during the course of her career she had seen quite a number of intubations. In addition, she directly observed and assisted Dr. Garla in the performance of the instant intubation. Thus, some foundation had been established for the presentation of the nurse's opinion evidence. More importantly, when asked about her abilities on cross-examination, the nurse admitted that her assessment of what amounted to undue force could not be made accurately. In our view, this admission alleviated any prejudice that may have accrued, and, accordingly, plaintiff's request for reversal on this issue is denied for failure to establish prejudice.

■ Plaintiff next alleges a violation of a motion *in limine* where the trial court allowed cross-examination on matters involving Dr. Holtzman's (plaintiff's expert) opinion about Dr. Koo's care of decedent. During trial, defense counsel asked Dr. Holtzman whether he had any opinions with respect to the care and treatment rendered by Dr. Koo. Plaintiff's attorney answered the question by stipulation in the affirmative. Plaintiff then objected to the question. The court sustained the objection, ordered that the question be stricken, and instructed the jury to disregard the question. The court did not strike the answer (the stipulation) because no such request was made by plaintiff. Plaintiff's motion *in limine* No. 2 prohibits arguments that other people, besides defendant, had not been sued. The facts presented above indicate the initiation of such an argument, but potential prejudice was substantially reduced because of the stipulation, the objection and the jury admonishment. Therefore, reversal on this issue is denied for failure to establish prejudice.

■ Plaintiff next argues he was denied a fair trial as a result of improper attempts to impeach the testimony of Dr. Holtzman. At trial, counsel for Dr. Michelotti asked Dr. Holtzman about fatality statistics resulting from a failure to diagnose esophageal perforation within the first 48 hours of its occurrence. Impeachment was attempted by pointing to Dr. Holtzman's deposition testimony about the fatality statistics relating to the failure to diagnose mediastinitis within the first 48 hours of its occurrence. Plaintiff argues that this

line of questioning constituted a deliberate attempt to mislead the jury and was an improper form of impeachment where the prior statement was not inconsistent with the latter. However, at trial, counsel for plaintiff only objected to the form of the question and not its substance. As discussed above, a specific objection to evidence, based solely on particular grounds, amounts to a waiver of objections to all grounds not specified or relied upon. (*Barreto*, 133 Ill. App. 3d at 130.) Therefore, we determine plaintiff has waived this issue for purposes of this appeal.

■■■ Plaintiff next argues for a retrial because counsel for Dr. Garla misrepresented plaintiff's burden of proof during closing arguments. Specifically, plaintiff objected to the following language:

"So it's as if the Plaintiff has three mountains that they have [*sic*] to scale."

Defense counsel preceded this comment by asserting that plaintiff must prove negligence, injury, and proximate cause. Plaintiff objected to this statement because it suggests that the applicable burden of proof is more stringent than the burden requiring plaintiff to prove his case by a preponderance of the evidence, the proper standard in the instant case. *Wallace v. Weinrich* (1980), 87 Ill. App. 3d 868, 871.

In presenting their arguments to the jury, counsel may state what they believe the law to be as long as their remarks are not misleading. (*Lounsbury v. Yorro* (1984), 124 Ill. App. 3d 745, 749.) The propriety of arguments made to the jury is a decision which rests in the sound discretion of the trial court and will not be reversed absent an abuse of that discretion. (*Mohler v. Blanchette* (1982), 106 Ill. App. 3d 545, 554-55.) Error at trial warrants reversal only if the error prejudiced the appellant or duly affected the outcome of the trial. *Lounsbury*, 124 Ill. App. 3d at 751.

In the present case, when a greater portion of the record is examined, it is apparent that plaintiff's case has not been prejudiced and a reversal is not warranted. First, the "three mountains" argument amounts to a simple analogy where the requisite elements of negligence are likened to mountains which plaintiff must climb. Such an analogy, while somewhat vague, does not unduly distort the preponderance of the evidence standard. Second, defense counsel for Dr. Garla specifically stated the correct preponderance of the evidence burden in the body of his argument. Finally, plaintiff effectively rebutted defendant's argument and dissipated its effectiveness by making an analogy of his own. Specifically, he stated:

"Mr. Cunningham talks about a mountain. You know and we all know from what he said in his other comments, we are not

talking about a mountain. We are talking about a 50 yard line. If the Plaintiff is that far off the 50 yard line in the Plaintiff's favor, the Plaintiff has fulfilled his burden of proof. We are not talking about a mountain. We are talking about less than a yard."

Therefore, we hold that admission of defense counsel's argument comparing plaintiff's burden to a mountain-climbing expedition does not amount to reversible error in the present case.

A party may argue that proving elements of negligence is like climbing mountains so long as the jury is properly instructed that a unanimous verdict is required regardless of who prevails. Since the jury in this case was correctly instructed on this issue by the trial court, reversible error has not occurred.

Finally, plaintiff argues that the combined effect of the errors cited above amounts to cumulative reversible error. In light of our discussion above, we determine that the issues raised by plaintiff do not amount to cumulative error justifying reversal.

The judgment of the circuit court of Kane County is affirmed.

Affirmed.

UNVERZAGT and WOODWARD, JJ., concur.