2019 IL App (1st) 161742

FIRST DIVISION
September 30, 2019

No. 1-16-1742

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County |
| | ) | |
| v. | ) | No. 13 CR 9104 |
| | ) | |
| | ) | |
| NELSON WASHINGTON, | ) | Honorable |
| | ) | Mary Margaret Brosnahan, |
| Defendant-Appellant. | ) | Judge Presiding. |

_____

JUSTICE PIERCE delivered the judgment of the court, with opinion.
Justice Hyman and Justice Walker concurred in the judgment and opinion.

## OPINION

¶ 1    Defendant, Nelson Washington, was convicted of aggravated battery with a firearm and reckless conduct and was sentenced to a term of 18 years' imprisonment.  Defendant now appeals and argues: 1) he is entitled to a new trial because the jury instructions resulted in legally inconsistent verdicts; 2) the trial court erred when it refused to instruct the jury after the jury requested the definition of the word "knowingly" for the aggravated battery with a firearm count; and 3) the trial court erred when it refused to instruct the jury on self-defense when there was evidence to support defendant's reasonable belief that unlawful force was threatened against him

or another and the force he used in response was necessary to avert harm to himself or others. For the following reasons, we reverse and remand for a new trial.

¶ 2                                      BACKGROUND

¶ 3     Defendant was charged under indictment with two counts of attempt first degree murder and one count of aggravated battery with a firearm based on the act of discharging a firearm and causing the paralysis of John Pipkin. Following a jury trial, defendant was convicted of reckless conduct, a lesser offense of attempt first degree murder, and aggravated battery with a firearm. He was sentenced to 18 years' imprisonment on the aggravated battery with a firearm conviction.

¶ 4     Pipkin testified that he had a party at his second-floor apartment at 5719 South Ada in Chicago on April 14, 2013. Pipkin was drinking and smoking marijuana and playing video games when he made a comment about Andre Lewis, which Lewis may or may not have overheard. Lewis entered the room and Pipkin started laughing at him. According to Pipkin, Lewis then said "what you laughing at, bitch?" Pipkin responded by telling Lewis to watch his mouth. Lewis cussed at Pipkin a second time and a fist fight ensued in the kitchen.

¶ 5     Pipkin, being the larger of the two men, ended up on top of Lewis. People at the party tried to break up the fight, including Washington who pulled Pipkin off of Lewis and then punched Pipkin in the face. Lewis and Washington ran out of the apartment and Pipkin chased after them. In an effort to stop him from going after Lewis and Washington, Pipkin's girlfriend, Octavia Addison, threw a cup of water on the floor and on the interior flight of stairs. Pipkin slid down the stairs but eventually made it outside.

¶ 6     Lewis was standing on the sidewalk yelling at Pipkin to come and fight. Pipkin obliged and he and Lewis started fist fighting. Pipkin knocked Lewis down and heard Washington say, "What's up now, bitch-ass nigga?" Pipkin turned around and saw Washington draw a gun from

his hoodie and put the gun to Pipkin's neck. Pipkin responded, "I ain't scared, shoot." Pipkin testified that he was just standing there, he heard the gun go off and then he fell to the ground. Once he fell to the ground, he could hear people telling him to get up but he could not move.

¶ 7     Pipkin was taken to the hospital, where he stayed for about a month before being transferred to a rehabilitation facility. He is wheelchair bound and cannot move his legs or the fingers of his right hand.

¶ 8     Elaine Leslie was at the party and watched the events outside from the apartment window. She saw Lewis and defendant confront Pipkin outside and saw defendant pull a gun from his pants and point it at Pipkin's neck. Pipkin told defendant, "bust that bitch, I'm not scared." Elaine sprinted down the stairwell but stopped halfway when she heard a gunshot. She was too scared to go outside because she was afraid defendant was going to shoot her. After defendant ran off, she went outside and asked Pipkin if he was hurt. He responded that he was and thought that he had been shot in the neck. She tried to stop the bleeding. Elaine saw defendant run towards his house and pass an object to another party-goer outside.

¶ 9     Elaine spoke with police officers and recounted what she saw and heard. She told them she only saw the barrel of the gun because defendant gripped the rest of the gun in his right hand. She identified defendant and Lewis from a photo array.

¶ 10     Brian Connors, a Chicago fire department paramedic, arrived on the scene and found Pipkin with a gunshot wound to his neck. Pipkin was transported to Stroger hospital for treatment.

¶ 11     Dr. Anthony Dennis, a trauma surgeon at Stroger hospital, evaluated Pipkin and determined that Pipkin suffered a partially severed spinal column from a single gunshot wound.

¶ 12    In the defense case, Andre Lewis, a felon, testified that he had known defendant since childhood and considered him a brother.  Lewis testified that he was at the party and followed Pipkin into a bedroom and confronted him after Pipkin called to him, "what your bitch-ass looking at?"  The men exchanged words and both wound up in the kitchen fist fighting.  Pipkin ended up on top of Lewis.

¶ 13    Defendant and Octavia tried to break up the fight.  After defendant pulled Pipkin off of Lewis, defendant and Pipkin started fighting.  After this fight was broken up, Lewis and defendant left the party and went across the street to defendant's house.  There, Lewis splashed water on his cut face and defendant changed his shirt.

¶ 14    Lewis still wanted to fight, so he left defendant's house and confronted Pipkin who was standing on the porch of his apartment building.  Lewis and Pipkin started fighting again.  Defendant approached and pushed Lewis and Pipkin apart.  Lewis testified that defendant swung an object at Pipkin, striking Pipkin's jaw.  When the object made contact with Pipkin's jaw, he heard Pipkin say, "you ain't gonnna bust that bitch."  Lewis testified that he heard a gunshot as defendant struck Pipkin with the object.  Defendant stood over Pipkin looking at him.  Lewis ran 11 blocks to his home after Pipkin was shot.  He never saw defendant leave the scene.

¶ 15    On cross-examination, Lewis admitted that he gave a written statement to police and a prosecutor.  He denied telling the police and prosecutor that he saw defendant hold a gun in his right hand and point it at Pipkin.  He denied telling the prosecutor that the gun was very small and appeared to be an automatic.

¶ 16    Defendant testified on his own behalf. He testified that he was at the party at Pipkin's in the living room when he heard Lewis and Pipkin arguing.  Pipkin went into the kitchen and

Lewis followed him. Pipkin and Lewis began fighting on the kitchen floor. When he broke up the fight, Pipkin hit him in the face. Defendant hit Pipkin back.

¶ 17    Defendant and Lewis left and went across the street to his house where he changed his shirt. Lewis left first. Defendant followed Lewis outside to watch Lewis fight Pipkin. There were other people out there watching the fight also.

¶ 18    Lewis got knocked down so defendant attempted to intervene. Defendant exchanged words with Pipkin and Pipkin charged him. Defendant was scared at this point so he pulled a handgun out of his back pocket and hit Pipkin with it. Defendant testified that he then pointed the gun at Pipkin and told him to step back. Pipkin approached and defendant believed that Pipkin was attempting to disarm him. Defendant stated that he moved Pipkin's outstretched hand and struck him with the weapon. When the gun made contact with Pipkin's neck, defendant heard the gun discharge. Defendant testified that his finger was not on the trigger and that he did not intend to shoot Pipkin. He claimed that he gripped the barrel of the gun so as not to point it at Pipkin and that he was unaware that the gun was loaded.

¶ 19    Defendant testified that he watched Pipkin fall to the ground and then ran from the scene. He stated that before he fled, he told Octavia to call the police. Defendant tried to throw the gun on the roof of a house two blocks away.

¶ 20    Reginald Newton, an assistant Cook County State's attorney, testified in rebuttal. He stated that Lewis made a formal statement to police, which Newton documented on his computer. In his statement, Lewis stated that he saw defendant point the gun at Pipkin's neck. Lewis read over the printed statement and signed every page to confirm its accuracy.

¶ 21    The court agreed, over the State's objection, to instruct the jury on the offense of reckless conduct as a lesser offense of attempt first degree murder and as a lesser offense of aggravated

battery with a firearm. The court used Illinois Pattern Jury Instructions (IPI), Criminal, Nos. 2.01R and 26.01R (4th ed. 2000), as modified. As to the charge of attempt first degree murder, these instructions informed the jury that it could find defendant "(1) not guilty of attempt first degree murder and not guilty of reckless conduct; or (2) guilty of attempt first degree murder; or (3) guilty of reckless conduct" and they would be given verdict forms that reflected these options. In addition, the jury was instructed that defendant could not be guilty of both attempt first degree murder and reckless conduct.

¶ 22    With respect to the charge of aggravated battery with a firearm, the jury was instructed that it could find defendant "(1) not guilty of aggravated battery with a firearm and not guilty of reckless conduct; or (2) guilty of aggravated battery with a firearm; or (3) guilty of reckless conduct," and that they would be given three verdict forms reflecting these options. Furthermore, the jury was instructed that it could not find defendant guilty of both aggravated battery with a firearm and reckless conduct.

¶ 23    During deliberations the jury requested a definition of "knowingly" with respect to the aggravated battery with a firearm charge. The court instructed the jury with only the first paragraph of Illinois Pattern Jury Instructions (IPI), Criminal, Nos. 5.01B (4th ed. 2000) entitled "Knowledge-Willfulness" and denied defendant's request to also instruct the jury with the second paragraph of the instruction.

¶ 24    The jury returned with verdicts finding defendant guilty of aggravated battery with a firearm and guilty of reckless conduct. The court held a side-bar conference off the record and then advised the jury "[s]o what we should have done when I initially gave them [the verdict forms] to you was, on each verdict form, there should have been a reckless conduct and in parentheses, you know, that had to do with the attempt first-degree murder charge. And the

second reckless conduct verdict should have had parentheses that said the aggravated battery with a firearm." The court instructed the jury to return to the jury room "[s]o the reckless conduct guilty that you signed, put in parentheses which of those two charges that was related to. Okay?" The jury returned with a guilty verdict form for reckless conduct with the notation "(Attempt First Degree Murder)" written at the top. The defendant was found guilty of aggravated discharge of a firearm and reckless conduct as a lesser included offense of attempt first degree murder and sentenced to 18 years' imprisonment on the aggravated battery with a firearm conviction. This timely appeal followed.

¶ 25                                                   ANALYSIS

¶ 26    Defendant first argues that because the jury was erroneously instructed, he was acquitted of attempted first degree murder and convicted of two offenses with mutually exclusive mental states arising out of the same act: aggravated battery with a firearm and reckless conduct. Defendant argues that because these verdicts are inconsistent, this court must reverse his convictions and remand for a new trial. The State agrees that defendant is entitled to a new trial because the verdicts are legally inconsistent but argues that we should not consider the jury instruction issue. Although the State recognizes that the jury instructions in this case were improper, it argues that "the error here rests with the end result, not the means that produced it." The State argues that defendant has forfeited this issue on appeal because defendant requested the improper instructions that were given (see *People v. Villareal*, 198 Ill. 2d. 209, 227-28 (2001) (defendant cannot object on appeal to the verdict forms he requested at trial)), but contends that defendant's forfeiture does not preclude our consideration of the ultimate issue in this case: that defendant's convictions for aggravated battery with a firearm and reckless conduct are legally inconsistent and therefore require reversal. While there is arguable merit to the State's forfeiture

argument, we nevertheless choose to address the jury instructions in this case because the instructions were the reason for the inconsistent verdicts and our analysis may assist trial judges in the future with an issue that is likely to recur.

¶ 27    There is some disagreement between the parties as to whether this is a jury instruction issue or an inconsistent verdict issue.  The distinction is meaningless here where we are asked to review two legally inconsistent guilty verdicts that are the result of the jury receiving erroneous or confusing instructions.  Defendant's conviction must be reversed and a new trial must be granted because the verdicts are legally inconsistent.

¶ 28    Defendant was prosecuted for two counts of attempt first degree murder and one count of aggravated battery with a firearm.  All three counts were based on the same underlying act of the defendant shooting and wounding Pipkin.  As charged, the greater offense of attempt first degree murder required that the State prove: (1) defendant intended to kill Pipkin; (2) that he intentionally committed an act that constituted a substantial step towards the commission of first degree murder; and (3) that during the commission of that act, he discharged a firearm that proximately cause either great bodily harm or permanent disability.  720 ILCS 5/4-3, 720 ILCS 5/8-4, 720 ILCS 5/9-1(a)(1) (West 2012). To prove aggravated battery with a firearm, the State had to show that: (1) defendant knowingly caused injury to Pipkin; and (2) he knowingly discharged a firearm. 720 ILCS 5/12-3.05(d)(1) (West 2012). The evidence at trial established that Pipkin's injury was the result of a singular act performed by Washington: shooting Pipkin in the neck while holding a loaded firearm. The evidence presented the jury with the question of whether Washington intended to kill or do great bodily harm, or did he knowingly perform an act that caused or would likely cause great bodily harm, or was his act of shooting Pipkin while holding a loaded firearm reckless.  Based on the evidence in this case, aggravated battery with a

firearm is a lesser included offense of attempt first degree murder. See *People v. Miller*, 238 Ill. 2d 161, 166 (2010).

¶ 29    The trial court granted defendant's request for a reckless conduct instruction as a lesser-included offense of both attempt first degree murder and aggravated battery with a firearm. The court then instructed the jury using Illinois Pattern Jury Instructions (IPI), Criminal, Nos. 2.01R and 26.01R (4th ed. 2000), as modified, which apply when a jury is instructed on "some other charge or charges" besides the charges that included lesser offenses. Specifically, as to the charge of attempt first degree murder, the jury was instructed that it could find defendant "(1) not guilty of attempt first degree murder and not guilty of reckless conduct; or (2) guilty of attempt first degree murder; or (3) guilty of reckless conduct" and was told they would be given verdict forms that reflected these options. In addition, the jury was instructed that defendant could not be guilty of both attempt first degree murder and reckless conduct. The jury was not told or instructed that aggravated battery with a firearm was also a lesser offense of attempt first degree murder. See *People v. Miller*, 238 Ill. 2d 161, 166 (2010).

¶ 30    With respect to the charge of aggravated battery with a firearm, the jury was instructed that it could find defendant "(1) not guilty of aggravated battery with a firearm and not guilty of reckless conduct; or (2) guilty of aggravated battery with a firearm; or (3) guilty of reckless conduct," and was informed that it would be given three verdict forms reflecting these options. Furthermore, the jury was instructed that it could not find defendant guilty of both aggravated battery with a firearm and reckless conduct.

¶ 31    The jury returned a verdict of guilty of reckless conduct, however, the verdict form did not specify whether the reckless conduct was a lesser offense of attempt first degree murder or

aggravated battery with a firearm. After a brief off the record sidebar, the trial court returned the reckless conduct verdict form to the jury and told the jury that

> "what we should have done when I initially gave [the instructions] to you was, on each verdict form, there should have been a reckless conduct and in parentheses, you know, that had to do with the attempt first-degree murder charge. And the second reckless conduct verdict should have had the parentheses that said the aggravated battery with a firearm."

The court continued, "[s]o the reckless conduct guilty that you signed, put in parentheses which of those two charges that was related to, okay?" The jury retired and later returned a guilty verdict form for reckless conduct with the words "Attempt First Degree Murder" written on the top.

¶ 32    We find that the instructions and verdict forms given were in error and confusing because the evidence in this case showed that both the charge of aggravated battery with a firearm and the offense of reckless conduct were lesser included offenses of attempt first degree murder. By failing to instruct the jury that aggravated battery with a firearm was a lesser included offense of attempt first degree murder, the jury was allowed to incorrectly consider the attempt first degree murder count and the aggravated battery with a firearm count as separate offenses performed with different mental states.

¶ 33    Jury instructions are necessary to provide the jury with the legal principles applicable to the evidence presented so that it may reach a correct verdict. *People v. Hopp*, 209 Ill. 2d 1, 8 (2004). The jury in this case should have been instructed using IPI 2.01Q and 26.01Q, which are to be used when instructing a jury about multiple greater offenses (*i.e.*, attempt first degree murder and aggravated battery) and lesser included offenses (*i.e.*, reckless conduct as a lesser

offense of both attempt first degree murder and aggravated battery); these instructions would have precluded the finding that defendant acted with two different mental states. The committee comments for IPI 26.01Q, states, "[t]his instructions should be used whenever the jury is to be instructed on one or more charges which include a lesser offense." IPI 2.01Q and 26.01Q would have informed the jury that defendant could only be convicted of attempt first degree murder or aggravated battery or reckless conduct. Accordingly, the jury should have been given four verdicts: (1) not guilty; or (2) guilty of attempt first degree murder; or (3) guilty of aggravated battery with a firearm; or (4) guilty of reckless conduct. See IPI Criminal, Nos. 2.01Q and 26.01Q (4th ed. 2000). In this manner, the instruction would have instructed the jury that the one act that formed the basis of the greater offense of attempt murder and the lesser included offenses of aggravated battery with a firearm and reckless conduct could result in only one conviction.

¶ 34    As a result of the erroneous instructions given, defendant was found guilty of reckless conduct as a lesser offense of attempt first degree murder and guilty of aggravated battery with a firearm. These two verdicts found defendant guilty, based on a single act, of knowingly committing one offense (aggravated battery with a firearm) and in the same act and at the same time recklessly committing a different offense (reckless conduct). Aggravated battery with a firearm and reckless conduct require proof of different mental states. A person commits the offense of aggravated battery of a firearm when he or she, while committing a battery, knowingly discharges a firearm and causes any injury to another person. 720 ILCS 5/12-3.05(e)(1) (West 2012). A person commits reckless conduct when he or she, "by any means lawful or unlawful, recklessly performs an act or acts" that "cause great bodily harm or permanent disability or disfigurement to another person." 720 ILCS 5/12-5(a)(2) (West 2012). Defendant could not have acted both recklessly and knowingly when he shot Pipkin where the

State charged defendant with a single course of conduct and the evidence showed only one act by the defendant.

¶ 35     When the jury returns multiple guilty verdicts on knowing and reckless offenses for the same conduct, the verdicts are legally inconsistent, and the defendant is entitled to a new trial. *People v. Hoffer*, 106 Ill. 2d 186, 195 (1985); *People v. Spears*, 112 Ill. 2d 396 (1986); *People v. Fornear*, 176 Ill. 2d 523 (1997).  In *Hoffer*, 106 Ill. 2d 186, our supreme court reversed the defendant's murder and manslaughter convictions and remanded for a new trial because the jury's multiple verdicts indicated that defendant acted in a knowing, intentional, and reckless manner for the same criminal conduct.  *Id.*  For the verdicts to be proper based on the same criminal conduct, the jury was required to find that defendant acted either knowingly or recklessly, but that these mental states were mutually inconsistent and could not coexist.  *Id.* at 195.

¶ 36     Our supreme court in *Spears*, 112 Ill. 2d at 407, expanded its holding in *Hoffer*, finding that where defendant's culpable conduct was essentially one act, the jury could not find that defendant possessed simultaneous knowing and reckless mental states.  In *Spears*, the defendant shot his wife and her friend in rapid succession.  The jury was given five verdict forms: one for attempted murder of his wife, two for armed violence as to his wife and her friend, and two for reckless conduct as to his wife and her friend.  The jury found the defendant guilty on all counts. *Id.*

¶ 37     The *Spears* court found that if verdicts were based on separate acts, then a jury could properly find that the defendant possessed separate culpable mental states for each act and could properly return verdicts of guilty on charges reflecting both knowing and reckless mental states. *Id.* at 406.  However, after reviewing the indictment and the evidence introduced at trial, the *Spears* court reversed and remanded for a new trial holding that the defendant's charges

overlapped, were the result of one criminal act, and that the evidence did not support a finding that defendant's mental state changed during the shooting of the two people. *Id*. As such, the jury could not have returned guilty verdicts based upon separate acts accompanied by different mental states. *Id*.

¶ 38 Finally, in *Fornear*, 176 Ill. 2d 523, the defendant shot his fiancé multiple times and the State argued that defendant's conduct of firing multiple gunshots supported separate verdicts for the offenses of aggravated discharge of a firearm, which required proof of a knowing mental state, and reckless conduct, which required proof of a reckless mental state. Our supreme court found that no evidence existed to support the State's theory on appeal that defendant's mental state changed from a knowing mental state to a reckless mental state during the shooting. *Id.* at 533. The court held that based on the evidence the jury could not rationally find that defendant's mental state had changed during the shooting or that he committed separate acts with different mental states and reversed the inconsistent guilty verdicts that found defendant acted with both knowing and reckless mental states. *Id*. at 534-35.

¶ 39 Here, like *Hoffer*, *Spears*, and *Fornear*, the act that formed the basis for the aggravated battery with a firearm and reckless conduct as a lesser offense of attempt first degree murder verdicts were based on one criminal act. The instructions given to the jury and the jury's subsequent finding that defendant acted both knowingly and recklessly is legally inconsistent. There is no evidence in the record before us to support a finding that defendant committed separate knowing and reckless acts or that defendant's mental state changed during his shooting of Pipkin. Based on this evidence, we conclude that the jury could have found that defendant acted either knowingly or recklessly, but it could not render inconsistent guilty verdicts that found defendant simultaneously acted knowingly and recklessly in performing the same conduct.

¶ 40    The jury found the defendant not guilty of attempt first degree murder when it returned the guilty verdict on the lesser offense of reckless conduct. The jury also found defendant guilty of the offense of aggravated battery with a firearm.  Because these verdicts are legally inconsistent, we reverse and remand for a new trial on the aggravated battery with a firearm charge. Defendant cannot be retried on the attempt first degree murder charge under double jeopardy principles.  *Price v. Georgia*, 398 U.S. 323, 329 (1970) ("this Court has consistently refused to rule that jeopardy for an offense continues after an acquittal, whether that acquittal is express or implied by a conviction on a lesser included offense when the jury was given a full opportunity to return a verdict on the greater charge.")). *Green v. United States*, 355 U.S. 184, 190-91 (1957) (finding of guilt by a jury of an included offense is an implied acquittal of a greater offense based on the same act when a defendant is charged with the greater offense).

¶ 41    We need not address defendant's remaining issues on appeal: 1) the trial court erred when it refused to instruct the jury after the jury requested the definition of the word "knowingly" for the aggravated battery with a firearm count; and 2) the trial court erred when it refused to instruct the jury on self-defense when there was evidence to support defendant's reasonable belief that unlawful force was threatened against him or another and the force he used in response was necessary to avert harm to himself or others, given our order of retrial.  Because we do not know what evidence will be presented on retrial, any view we express on these issues would be purely advisory.  However, we are confident the trial court will make the appropriate rulings based upon the evidence presented on retrial.

¶ 42                    CONCLUSION

¶ 43    In light of the foregoing, we reverse and remand for a new trial on the aggravated battery with a firearm count.  Given our holding, we need not address defendant's remaining claims.

¶ 44    Reversed and remanded for a new trial.