2022 IL App (2d) 210230-U
No. 2-21-0230
Order filed August 23, 2022

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(l).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the Circuit Court |
| | ) | of Du Page County. |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | No. 18-CM-1349 |
| | ) | |
| GARRY L. BRODERSEN, | ) | Honorable |
| | ) | Paul A. Marchese, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE SCHOSTOK delivered the judgment of the court.
Justices Jorgensen and Birkett concurred in the judgment.

**ORDER**

¶ 1    *Held*:  Jury returned legally inconsistent verdicts when it found the defendant guilty of both endangering the health of a child and reckless conduct based on the same conduct; the defendant was not deprived of a fair trial based on the State's expert's testimony.

¶ 2    Following a jury trial, the defendant, Gary Brodersen, was convicted of reckless conduct (720 ILCS 5/12-5(a)(1) (West 2018)) and knowingly permitting the life or health of a child to be endangered (*Id.* § 5/12C-5(a)(2)) and was sentenced to 12 months of court supervision and 20 hours of public service.   On appeal, the defendant argues that (1) the jury returned legally inconsistent verdicts; and (2) the jurors were improperly admonished under Illinois Supreme Court

Rule 431(b) (eff. July 1, 2012) and (3) the State's expert's testimony deprived him of a fair trial. We reverse and remand for additional proceedings.

¶ 3                                    I. BACKGROUND

¶ 4    The defendant was a chemistry teacher at Bartlett High School. On May 15, 2018, the defendant was doing experiments with liquid nitrogen. One of the defendant's students, V.K., volunteered to participate in a demonstration. After V.K. laid down on the ground, the defendant poured liquid nitrogen on V.K.'s chest. The liquid also went to V.K.'s groin area. The liquid nitrogen caused V.K. various injuries, which led him to go to the hospital for treatment.

¶ 5    On June 22, 2018, based on the above incident, the defendant was charged by complaint with one count of reckless conduct. (720 ILCS 5/12-5(a)(1) (West 2018)). On April 2, 2020, the defendant was charged by information with two additional counts. Count 2 charged that the defendant knowingly caused or permitted the life or health of V.K. to be endangered (*Id.* § 5/12 C-5(a)(1)). Count 3 charged that the defendant knowingly caused or permitted V.K. to be placed in circumstances which endangered his life or health (*Id.* § 5/12C-5(a)(2)).

¶ 6    On March 8, 2021, the trial court conducted a jury trial on the charges against the defendant. V.K., the investigating police officers, and Dr. William Peacy testified. The trial court qualified Dr. Peacy as an expert in chemistry. Dr. Peacy is a professor of chemistry at the College of Du Page and has been teaching that subject for 16 years. He also supervises laboratory safety at the College of Du Page.

¶ 7    Dr. Peacy testified that liquid nitrogen is used in many laboratory experiments to show reactions without oxygen. He testified that if liquid nitrogen stays on your skin, it will cause the water in your skin to freeze and, if you rub the skin, it can cause the cells to break. He testified that the American Chemical Society (ACS) recommends that participants for all laboratory

experiments wear splash goggles, long pants, and closed-toed shoes. With liquid nitrogen experiments, the ACS additionally recommends that people wear a leather apron and insulated gloves.

¶ 8    Dr. Peacy reviewed videos of the incident that were recorded by V.K.'s classmates as well as the police reports. Over defense objection, Dr. Peacy testified as to what he saw on the video while it played for the jury. He testified that it was dangerous to have V.K. lie down because the liquid could pool and cause damage. He also testified that the act of pouring liquid nitrogen on V.K.'s chest and groin was dangerous because V.K. could have gotten it into his eyes or his mouth or he could have gotten frostbite.

¶ 9    At the close of the trial, the jury found the defendant guilty of reckless conduct and endangering the life of a child by causing or permitting a child to be placed in circumstances which endanger his life or health. The jury found the defendant not guilty of the second count of endangering the life of a child.

¶ 10    Following the denial of his motion for a new trial, the trial court placed the defendant on 12 months of court supervision and ordered that he perform 20 hours of public service work. The defendant thereafter filed a timely notice of appeal.

¶ 11                                II.  ANALYSIS

¶ 12    The defendant's first contention on appeal is that he is entitled to a new trial because the jury returned legally inconsistent verdicts when it found him guilty of both endangering the health of a child and reckless conduct based on the same conduct. The State confesses error.

¶ 13    When the jury returns multiple guilty verdicts on knowing and reckless offenses for the same conduct, the verdicts are legally inconsistent, and the defendant is entitled to a new trial. *People v. Washington*, 2019 IL App (1st) 161742, ¶ 35. Here, the defendant committed one act of

pouring liquid nitrogen on V.K.'s body. Based on this one act, the jury found the defendant guilty of both endangering the health of a child, which requires a knowing mental state (720 ILCS 5/12C-5(a)(2) (West 2018)), and reckless conduct, which requires that the actions be done with a reckless state of mind (*Id.* § 5/12-5(a)(1)). As the defendant's commission of the same act could not be both knowing and reckless, the jury's verdicts were legally inconsistent. *Washington*, 2019 IL App (1st) 161742, ¶ 35. We therefore reverse the judgment of the circuit court and remand for a new trial on the two counts on which the defendant was convicted. See *People v. Spears*, 112 Ill. 2d 396, 407 (1996).

¶ 14 Based on our resolution of this issue, the defendant acknowledges that we do not have to address his second contention—whether the jury was properly admonished pursuant to Illinois Supreme Court Rule 431(b) (eff. July 1, 2012).

¶ 15 The defendant's final contention on appeal is that he was deprived of a fair trial based on Dr. Peacy's testimony. Although the State insists that this issue was not properly preserved, we will address it since it is likely to occur on remand. See *People v. Fuller*, 205 Ill. 2d 308, 346 (2002) (on review, once it is determined that a new trial is required, additional claims of error may be addressed if they are likely to arise again on remand).

¶ 16 "In deciding whether to admit expert opinion testimony, the trial court must consider whether the testimony would aid the jury in understanding the facts." *Soto v. Gaytan*, 313 Ill. App. 3d 137, 146 (2000). In general, the factors a trial court will consider include the complexity of the subject involved, "the purpose for which the opinion is offered, its relation to the ultimate issue to be determined, and the danger of undue prejudice." *Wade v. City of Chicago Heights*, 295 Ill. App. 3d 873, 882 (1998). The "decision to allow an expert to testify on matters of opinion lies within the discretion of the trial court." *Burns v. Michelotti*, 237 Ill. App. 3d 923, 933 (1992). We

will not reverse an erroneous ruling unless the error was prejudicial, or the result of the trial was materially affected. *Townsend v. Fassbinder*, 372 Ill. App. 3d 890, 905 (2007).

¶ 17    An expert's "[t]estimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact."  Illinois Rule of Evidence 704 (eff. Jan. 1, 2011).  Permission to opine on an ultimate issue, however, is not synonymous with permission to express that opinion as a legal conclusion. *Brettman v. Virgil Cook & Son, Inc.*, 2020 IL App (2d) 190955, ¶ 83.  The difference between the two concepts is subtle.  *Id.*  As such, when addressing the ultimate issue, the expert, or any witness, should avoid couching his or her opinion as a legal conclusion. See *Torres v. County of Oakland*, 758 F.2d 147, 150 (6th Cir. 1985).

¶ 18    Courts should decline to admit testimony that is phrased in terms that have a special meaning in the law that is different from their meaning in the common vernacular.  *Id.* at 151.  Examples from the case law include excluding testimony that the defendant was "negligent," but not that the defendant's conduct fell below the standard of care (*Haney v. Mizell Memorial Hospital*, 744 F.2d 1467, 1473-75 (11th Cir. 1984)), and excluding testimony that the defendant used "unjustified" "deadly force" (*Hygh v. Jacobs*, 961 F.2d 359, 363-64 (2d Cir. 1992)).  Again, opinions couched in legal terms could cause the jury to misunderstand the law.  *Torres*, 758 F.2d at 150.

¶ 19    Here, the defendant suggests that it was improper for Dr. Peacy to use the term "dangerous" because that was similar to the term "endangered," which meant that Dr. Peacy was then giving a legal conclusion.  The defendant insists that the prejudicial effect of Dr. Peacy stating that the defendant's actions were dangerous far outweighed any value.  We disagree.  Dr. Peacy was qualified to give his opinion as to the defendant's actions.  Dr. Peacy's testimony that the

defendant's actions were dangerous went to the ultimate issue in the case; it did not go to the legal conclusion of whether the defendant's conduct endangered the health of the victim. The fact that the terms "dangerous" and "endangered" are similar is not a reason for us to reach a different conclusion. "Dangerous" is not a specialized term that means something different in the law than it does in the common vernacular. See *Torres*, 758 F.2d at 151. Dr. Peacy's use of that well-understood word did not infringe upon the jury's determination of whether the defendant's conduct had endangered the life or health of a child. As such, it was within the trial court's discretion to allow the admission of such testimony.

¶ 20   We also reject the defendant's argument that Dr. Peacy should not have been allowed to comment on the video of the incident while it was shown to the jury. Dr. Peacy's commentary helped the jurors understand what they were seeing. For example, he testified that the cracking sound that could be heard in the video was the radical expansion of liquid volume to gas volume. He also explained that liquid nitrogen poured on someone would not feel light and why it would feel heavier. Accordingly, the trial court, in its discretion, could determine that the probative value of Dr. Peacy's testimony during the video outweighed its potential prejudicial impact. See *Burns*, 237 Ill. App. 3d at 933.

¶ 21                                III.   ANALYSIS

¶ 22   For the foregoing reasons, we reverse the judgment of the circuit court of Du Page County and remand for additional proceedings.

¶ 23   Reversed and remanded.